JUDE G. GRAVOIS, Judge.
12Appellant, Depp Troxler, has appealed a trial court judgment rendered in this domestic dispute on November 15, 2011. For the reasons that follow, we affirm.

FACTS

On July 16, 2010, Depp Troxler filed suit against appellee, Melinda Breaux, alleging that he was evicted from a home in which he and Ms. Breaux had lived; that the home was jointly owned; that Ms. Breaux’s actions constituted fraud; and that he was “entitled to receive his one-half interest in the property together with the items of furniture and fixtures in the house for which he paid personally or in the alternative, that defendant be condemned to pay the plaintiff for his one-half interest in the value of the house and contents.” Ms. Breaux answered the petition, denying that Mr. Troxler had any ownership interest in the house, alleging that she had purchased the home on her own. She admitted she had borrowed $10,000 from Mr. Troxler that she still owed him, and asserted she had attempted to repay him, but he had refused her offer of payment. She further admitted that he may also be entitled to the return of certain furniture and appliances that had been purchased for the home. Ms. Breaux further alleged that money deposited by Mr. |sTroxler into the joint account they maintained was actually used to pay bills incurred by the household during the time they lived together.
Prior to trial, the parties stipulated that the house and property in question was in Ms. Breaux’s name alone and belonged to her, and that Mr. Troxler had loaned Ms. Breaux $10,000, which was still owed by her.
At trial, both parties testified and confirmed that in December 2008, Ms. Breaux purchased a home in Hahnville, Louisiana, and that they had lived together in this home from December 2008 until October 2009. Mr. Troxler testified that he was working in Alaska during this time period and actually lived in the home for only a total of four months. Ms. Breaux agreed that Mr. Troxler was working in Alaska during that time, but testified that he was at the home for more than four months during that time. She admitted that he worked only one six-week period in Alaska during that time, and that at all other times, he worked only two- or three-week periods in Alaska, followed by comparable time off which he spent at the home in Hahnville.
The parties also agreed that in 2008, they converted Ms. Breaux’s separate checking account into a joint account. Mr. Troxler testified that he deposited $4,000 into this account on November 25, 2008 to pay bills and expenses for the home. They further agreed that they both deposited funds into this account over the next ten months and that the household expenses *947 were paid out of this account. These expenses included the mortgage note on the house, and the cable, telephone, electricity, gas, and water bills for the house. Mr. Troxler explained that their banking was done on-line and that they would communicate with each other while he was working in Alaska. He testified that Ms. Breaux would regularly tell him how much money she needed and he would give her permission to transfer these amounts into the joint checking account from his separate account. Mr. Troxler |4submitted a list of on-line transfers from his separate account to the joint account and deposits that he made to the joint account, which transfers and deposits totaled $33,219.35. He went through the bank statements of the joint account from December 2008 until October 2009 and specifically identified which deposits he made into the account and which deposits were made by Ms. Breaux.
Mr. Troxler further testified that during this time, he also purchased various items with his separate funds for the house, including a refrigerator, a washer and dryer, furniture (consisting of bunk beds), lawn equipment, an air compressor, pots and pans, decorative items, and other miscellaneous items. He stated that all of these items were still in the house when he was evicted from the house in October 2009. When he left, he did not take any of these items with him; he took only his personal items with him at that time. He testified that the mortgage note on the house was paid from the joint account from December 2008 until September 2009.
On cross-examination, Mr. Troxler testified that he lived at this home with Ms. Breaux when he was not in Alaska. He admitted that he did not live anywhere else during this time. He stated that during the ten months that he lived in the house, everything he bought went into the house. He did not, however, have any receipts for any of the items he claims he purchased for the home. He admitted that Ms. Breaux had offered to repay him the $10,000 loan he had made to her.
Ms. Breaux testified that Mr. Troxler had loaned her $10,000 that she had not yet paid back. She admitted that Mr. Troxler had purchased items for the house, including a washer and dryer, beds, lawn equipment, and an air compressor, all of which were still at the home. She stated that she had offered all of these items to him. She testified that she no longer had the refrigerator that had been purchased by Mr. Troxler; it broke down and she had to purchase a new one to replace it. She testified that Mr. Troxler did not purchase any pots and pans for the Rhome; rather, the pots and pans in the home were the ones that she had prior to moving into the home. She testified that she did not have possession of any receipts for any of the items that Mr. Troxler claims he had purchased for the home.
At the conclusion of the trial, the parties submitted post-trial memoranda. The court then rendered judgment in the amount of $10,000 in favor of Mr. Troxler and against Ms. Breaux. The judgment further ordered Ms. Breaux to allow Mr. Troxler to retrieve the washer and dryer, bunk beds, lawn equipment, and air compressor from the home. This timely appeal by Mr. Troxler followed.

ASSIGNMENT OF ERROR

The trial court erred in failing to award the plaintiff all of the funds which were spent on behalf of the defendant.

In his only assignment of error, Mr. Troxler argues that he spent a total of $32,770.78 “on the house and furnishing and other living expenses” during the ten-month period from December 2008 until October 2009 that he lived with Ms. *948 Breaux. He contends that during this time period, he was only physically present in the house for four or five months. He states that “his payments were building up her equity position in the house, which she retains, and for which he got no credit.” He contends that the trial court judgment is unreasonable because “she keeps the house and he gets some used furniture and equipment in return.” He argues that “she has been unjustly enriched and he has been prejudiced by that enrichment.” He states that he does not know the condition of the movables in the house and argues that “an equitable solution would be to award [him] a money judgment of $12,000 to $15,000 and allow [her] to keep the movables.”
|fiIn support of his position, Mr. Troxler cites Civil Code article 2298, which provides, in pertinent part:
A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term “without cause” is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less.
Under Louisiana law, the requisite elements of a claim for unjust enrichment are: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) no other available remedy at law. Pinegrove Elec. Supply Co., Inc. v. Cat Key Const., Inc., 11-660 (La.App. 5 Cir. 2/28/12), 88 So.3d 1097, 1100.
Upon review, we find that Mr. Troxler did not prove the elements of unjust enrichment. The testimony at trial indicates that both parties routinely deposited funds into the joint account and that these funds were used to pay the mortgage note and other expenses, including the cable and utility bills for the home. While it is evident that Mr. Troxler was not present at the home every day during the ten-month period that the parties cohabitated, the number of weeks that he was absent and working in Alaska was not clearly established in the record. Mr. Troxler testified that his belongings were at the house and he was not living anywhere else during this ten-month period. He testified that after he was added to Ms. Breaux’s bank account to make the account a joint account, he deposited $4,000 into the account to pay “bills, whatever we needed” for the house. He testified that their banking was done on the computer, and when he was in Alaska, Ms. Breaux |7“would call me and ask me if it’s okay to transfer the money and I let her do whatever was needed out of my account to the joint account.”
Ms. Breaux readily admits that she still owes the $10,000 loan Mr. Troxler made to her, and that he can come over to her house to pick up the washer and dryer, bunk beds, lawn equipment, and air compressor that he purchased. In his brief, Mr. Troxler states that he does not want these movables because they are three and a half years old and he does not know what their present condition is. However, he cites no law to support his contention that he is entitled to a money judgment in place of these items. Further, Ms. Breaux testified that in December 2009, she offered to pay Mr. Troxler the $10,000 she owes him and to divide the items that they had *949 accumulated together. She testified that he refused this offer. During the trial, Mr. Troxler testified about several charges he made on his debit card for purchases from various retailers that he claims were for items purchased for the home; however, he did not have any receipts to identify what items were purchased at these retailers.
The applicable standard of appellate review of the factual findings of the trial court is the manifestly erroneous or clearly wrong standard. Under this standard, in order to reverse a trial court’s finding, an appellate court must conduct a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong. S.J. v. Lafayette Parish Sch. Bd., 09-2195 (La.7/6/10), 41 So.3d 1119, 1127-28; Stobart v. State, Dep’t of Transp. and Development, 617 So.2d 880, 882 (La.1993). The issue to be resolved by the appellate court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was reasonable. Id. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing IsCourt may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. Accordingly, where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous. Id. When applying the manifestly erroneous/clearly wrong standard to the findings of the trial court, appellate courts must continually keep in mind that their initial review function is not to decide factual issues de novo. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Credibility determinations of the trier of fact are subject to the utmost deference under the manifest error/clearly wrong standard. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305. Consequently, if the trial court’s decision is reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though the appellate court would have weighed the evidence differently. Rosell, supra.
Mr. Troxler argues that the trial court’s findings of the amount he paid towards movables and living expenses for the home during his period of cohabitation with Ms. Breaux is unreasonable, given that he actually lived there for only four or five months. However, Mr. Troxler’s own testimony confirms that he allowed Ms. Breaux to transfer funds from his separate account into the joint account for whatever household expenses she deemed necessary. There was no testimony from Mr. Troxler as to which specific expenses Ms. Troxler incurred for the house during this time period were unreasonable. Further, all of Mr. Troxler’s belongings were at the home during the time period when he was absent, and all of the fixed expenses of the home, such as the house note, cable bills and utility bills, had to be paid whether or not Mr. Troxler was physically present at the house. It is reasonable to conclude that during the time period when Mr. Troxler was physically present in the home, food and other consumables had to be purchased for his consumption and use.
|9Mr. Troxler also argues that his payments increased Ms. Breaux’s equity in the house; however, no documents were presented in the trial court to support this argument. Mr. Troxler testified that pots, pans and decorative items for the house were purchased at various retailers; however, he produced no receipts or other documentation to support this testimony. The exact amount of time Mr. Troxler actually spent at the house is not clear *950 from the record, but both parties agree that Mr. Troxler was working in Alaska at the time and was gone for several weeks at a time. Thus, the trial court’s finding that Mr. Troxler resided at the residence for approximately half of the ten-month period from December 2008 until October 2009 is not clearly wrong.
In his reasons for judgment, the trial judge stated that the house note for the property was approximately $2,000 per month and $20,000 of the deposits during the ten-month period of cohabitation went to pay this expense. This finding is supported by the bank statements of the joint account which were admitted into evidence. The trial judge further found that the “remaining total of deposits during this time period was not an unreasonable amount to pay the other household expenses and purchase consumables.”
Our review of the record in this case in its entirety indicates that the trial court’s findings were reasonable and are supported by the record.

CONCLUSION

For the foregoing reasons, the judgment of the trial court under review is affirmed.

AFFIRMED