ROBERT A. CHAISSON, Judge.
| ^Defendant, Joseph Howard, appeals his conviction and sentence for aggravated battery. For the reasons that follow, we affirm his conviction and sentence and remand the matter for correction of an error patent as noted herein.

PROCEDURAL HISTORY

On November 13, 2012, the Jefferson Parish District Attorney filed a bill of information charging defendant with attempted second degree murder, in violation of La. R.S. 14:27 and La. R.S. 14:30.1; Defendant pled not guilty and thereafter proceeded to trial before a twelve-person jury. After considering the evidence presented, the jury, on August 7, 2013, found defendant guilty of the responsive verdict of aggravated battery. On September 18, 2013, the trial judge-sentenced defendant to seven years at hard labor to run consecutively with any other sentences being served. • .
^Immediately following'the imposition of the sentence, the State filed a bill of information pursuant to La. R.S. 15:529.1 alleging that defendant was a second felony offender. After conducting a hearing on the multiple offender bill, the trial court found defendant to be a second felony offender, vacated his original sentence, and sentenced ' defendant' to' seven yeárs at *362 hard labor to run consecutively with any other sentences being served. Defendant now appeals.[1]

FACTS

This case stems from a shooting that occurred in Westwego on August 28, 2012, which resulted in injury to Herman Triggs, III. Two different versions of events were presented at trial.
According to Mr. Triggs and his girlfriend at the time, Frenada Jack, they were driving home from New Orleans just before midnight when Mr. Triggs’s truck started overheating. Since his grandmother’s house was on the way home, he decided to stop there to put some water in the radiator. Keith Lewis, his grandmother’s neighbor, saw Mr. Triggs in the driveway and offered to fill up a jug with water for him. While Mr. Lewis got the water, Mr. Triggs checked under the hood of his truck as defendant, known in the neighborhood as “T” or “Terrel,” approached. The two then spoke about a bag of marijuana defendant had given Mr. Triggs, and according to Mr. Triggs, defendant wanted some of the marijuana back. Defendant was rushing him, and Mr. Triggs told him, “don’t f* * * with me like that.” Mr. Triggs claimed that he gave the bag of marijuana to Mr. Lewis to give to defendant and then proceeded back to his truck, at which point defendant approached with a gun, shot him in the abdomen, and left the scene.
Mr. Lewis, an EMT, assessed Mr. Triggs’s wound and then helped him onto his grandmother’s porch. In the meantime, pursuant to a 9-1-1 call, an ambulance 14 arrived and transported Mr. Triggs to the hospital. In addition, officers from the Jefferson Parish Sheriffs Office arrived on the scene and interviewed the witnesses. As a result of her investigation, Detective Rhonda Goff learned that the person known as “T” or “Terrel” was actually defendant, and she thereafter compiled a photographic lineup that included a picture of defendant. Both Ms. Jack and Mr. Triggs[2] positively identified defendant as the shooter. In addition, Mr. Lewis identified defendant as the man speaking to Mr. Triggs at the time of the shooting.
In contrast to the scenario presented by the State, defendant offered his own version of the events that occurred on August 28, 2012. According to defendant, shortly before midnight, he was in the neighborhood looking for “Chuckie” in order to buy some crack cocaine. Unable to find Chuckie, defendant saw Mr. Triggs, from whom he previously bought drugs, and asked him if he had any drugs. Defendant, who had recently received some extra money and was interested in possibly purchasing a vehicle, also inquired about a truck Mr. Triggs had been trying to sell. According to defendant, Mr. Triggs took his money for the drugs and went back to the truck; defendant assumed he was completing the transaction. As Mr. Triggs came out of his truck and turned back towards defendant, he pulled out a gun and began patting down defendant’s pockets. Defendant figured that Mr. Triggs thought the money for the truck was on *363 his person and was attempting to rob defendant. Thinking that his life was in danger, defendant grabbed Mr. Triggs’s arm and struggled to prevent the gun from being pointed at him. •• Defendant then heard a “pow,” thought he could have been shot, and fled the scene.
| SUFFICIENCY OF THE EVIDENCE
In his sole assigned error on appeal, defendant challenges the sufficiency of the evidence'used to convict him.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or' a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). ■ Under the Jackson standard, a review of the record for the sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond á reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
Although defendant in the present case was charged .with attempted second degree murder, the jury found him guilty of the lesser charge of aggravated battery, a violation of La. R.S. 14:34. To support a conviction of aggravated battery, the State has the burden of proving three elements: 1) that the defendant intentionally ■ used force or violence against the victim; 2) that the force or violence was inflicted with a dangerous weapon; and 3)' that the dangerous weapon was used in a manner likely to cause death or'great bodily harm. State v. Rainey, 98-436 (La.App, 5 Cir. 11/25/98), 722 So.2d 1097, 1102, writ denied, 98-3219 (La.5/7/99), 741 So.2d 28.
In the .present case, defendant does not challenge the essential, statutory elements of the offense, nor does he contest his identification as the perpetrator. Rather, he maintains that he proved by a preponderance of the evidence that the | fishooting was done in self-defense, and therefore, the jury should, have found him not guilty. We find no m.erit to defendant’s argument.
The fact that an offender’s conduct is justifiable, although otherwise criminal, shall constitute a ‘defense to prosecution for any crime based on that conduct. La. R.S. 14:18. The use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible‘offense against the person, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense. La. R.S. 14:19(A). The aggressor or the person-who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21. When self-defense or the defense of another -is claimed by the defendant in a non-homicide case, the defendant has the burden of proof by a . preponderance of the evidence that his actions were in self-defense or in defense of others. State v. Bannister, 11-602 (La.App. 5 Cir. 2/14/12), 88 So.3d 628, 635, writ denied, 12-628 (La.6/15/12), 90 So.3d 1060.
■ In the present case, the jury‘was presented with conflicting testimony regarding the circumstánces of the shooting. Mr. Triggs testified that as he was checking under the hood of his truck, defendant approached him, and the two spoke about *364 a bag of marijuana defendant had given him. According to Mr. Triggs, defendant wanted some of the marijuana back. Defendant was rushing him, and Mr. Triggs told him, “don’t f* * * with me like that.” Mr. Triggs claimed that he gave the bag of marijuana to Mr. Lewis to give to defendant and then proceeded back to his truck, at which point Mr. Triggs heard the gunshot that hit him. Mr. Triggs turned around and saw defendant walking back towards the street, | ^putting the gun away. Mr. Triggs’s version of events was corroborated at trial by Ms. Jack and Mr. Lewis. - Ms. Jack, who was in-the truck with Mr. Triggs at the time of the incident, testified that Mr. Triggs and defendant had a .brief conversation that “ended kind of rough.” As Mr. Triggs walked back towards the truck, Ms, Jack heard him tell defendant, “don’t f* * * with me like that.” Before Ms. Jack could ask what was going on, she saw defendant out of. her peripheral vision walk around the front of the truck and shoot Mr. Triggs once at “real close range.” In her testimony, Ms. Jack maintained that she did not witness any sort of struggle between the two men before the shooting.
In addition, Mr. Lewis testified that while he was getting the water for Mr. Triggs’s truck, he saw defendant and Mr. Triggs speaking.' Mr. Lewis then heard Mr. Triggs start arguing with defendant and say, “don’t f* * * with me.” According to Mr. Lewis, it sounded like Mr. Triggs was defending himself. Mr. Lewis then heard a gunshot and eventually realized that Mr. Triggs had been shot.
In contrast to the testimony presented by the State, defendant presented his own version of events. According to defendant, shortly before midnight, he was in the neighborhood looking for “Chuckie” in order to buy some crack cocaine. Unable to find Chuckie, defendant saw Mr. Triggs, from whom he previously bought drugs, and asked. :him if he had any drugs. Defendant, who had recently received some extra money and was interested in possibly purchasing, a vehicle, also inquired about a truck Mr.-Triggs had been trying to sell. According to defendant, Mr. Triggs took his money for the drugs and went back to the truck; deféndant assumed he was completing the transaction. As Mr. Triggs came out of -his- truck and turned back towards defendant, he pulled out a gun and began patting down defendant’s pockets. Defendant figured that Mr. Triggs thought the money | sfor the truck was on his person and was attempting to rob defendant. Defendant testified that he had been shot when he was younger, and he was overcome with fear and panic having a gun pointed at him. Thinking that his life was in danger, defendant grabbed Mr. Triggs’s arm and struggled to prevent the gun from being .pointed at him. . During the course of the struggle, the gun went off, and defendant fled the scene. During his testimony, defendant maintained that he was just trying to defend himself from Mr. Triggs’s aggression because he had seen Mr. Triggs enraged before, and he knew something was wrong when Mr. Triggs turned back towards him.
After listening to this conflicting evidence, the jury found defendant guilty of the responsive verdict of aggravated battery.' By returning the guilty-verdict, the jury obviously rejected defendant’s account of events that Mr. Triggs pulled a gun on him and the gun accidentally went off as they struggled for the gun. The credibility of a witness is within the- sound discretion of the trier of fact, who may ■accept or reject, in whole or in part, the testimony. of any witness. It is not the function of the appellate court to assess credibility or reweigh the evidence.. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d *365 442, 443; State v. Falcon, 06-798 (La.App. 5 Cir. 3/13/07), 956 So.2d 650, 657.
The evidence presented at trial clearly supports the jury’s rejection of defendant’s self-defense claim. In particular, the testimony of the State witnesses, Mr. Triggs, Ms. Jack, and Mr. Lewis, was generally consistent in that defendant spoke with Mr. Triggs, there was some sort of verbal disagreement between the two men, and then defendant shot Mr. Triggs. Viewing the evidence presented at trial in the light most favorable to the prosecution, we find that a rational trier of fact could have determined that defendant did not prove by a prepondérance' of the j9evidence that the shooting was done in self-defense. Accordingly, defendant’s árguments relating to the sufficiency of the evidence are without merit.

ERRORS PATENT REVIEW

We have reviewed the record for errors patent in accordance with La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals one error that requires correction.
In particular, the uniform commitment order incorrectly reflects the date of the offense as September 18, 2012. The record shows that the actual date of the offense was August 28, 2012. In accordance with established procedure, we remand this case to the district court with instructions to correct the uniform commitment order to reflect the proper date of the offence. We further instruct the Clerk of Court for .the 24th Judicial District Court to transmit the original of the corrected uniform commitment order to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections’ Legal Department. See La. C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-244 (La.9/15/06), 937 So.2d 846; State v. Lyons, 13-564 (La.App. 5 Cir. 1/31/14), 134 So.3d 36, writ denied, 14-481 (La.11/7/14), 152 So.3d 170.
Accordingly, for the reasons set forth herein, we affirm defendant’s conviction for aggravated battery and his seven-year enhanced sentence. We however remand the matter for correction of an error patent as noted herein , ,

CONVICTION AND SENTENCE AFFIRMED: REMANDED WITH INSTRUCTIONS.

. Defendant filed an application for post-conviction relief seeking to restore his appellate rights. On May 15, 2015, the trial court granted defendant’s request for an out-of-time appeal,

.. Mr. Triggs was unable to identify defendant as the perpetrator in the first photographic lineup that was shown to him while he was in the hospital. However, Mr. Triggs positively identified defendant in the second photographic lineup, which contained a more recent photograph of defendant, as the person who shot him.