CHAISSON, J. | defendant, Jeffery M. Haydin, appeals his conviction and enhanced sentence for second degree battery. For the reasons that follow, we affirm defendant’s conviction and sentence; however, we remand the matter for correction of an error patent as noted herein. PROCEDURAL HISTORY On January 20, 2015, the Jefferson Parish District Attorney filed a bill of information charging defendant with the second degree battery of Katie Haydin, in violation of La. R.S. 14:34.1; Defendant pled not guilty at his arraignment on January 21, 2015. The matter proceeded to trial before a six-person jury on June 21, 2016. The following day, the jury returned a verdict of guilty as charged. On August 4, 2016, the trial court sentenced defendant to five year's imprisonment at hard labor. The State filed a multiple offender bill of information,[1] alleging defendant to be a second felony offender, to which defendant stipulated , on September 1, 2016. On the same date, the trial court resentenced defendant as a second felony offender, pursuant to La. R.S. 15:529.1, to ten years imprisonment at hard labor without benefit of probation or suspension of .sentence. Defendant now appeals.[2] FACTS On November 21, 2014, defendant and his wife, Brandy Haydin, traveled from Mississippi to Metairie, Louisiana, to attend his mother’s funeral. While at his deceased mother’s home in Metairie, he noticed that certain items had been taken from her house. Nicole Jolly, a family friend who lived nearby, informed Brandy that she had observed Katie Haydin, defendant’s sister-in-law, at I ¡defendant’s mother’s house-removing boxes of items. Defendant called Scott Haydin, his brother and Katie’s husband, to inquire as to the whereabouts of the missing items and was informed that Scott and his family were celebrating his daughter’s birthday at Chuck E. Cheese and did not intend on discussing the subject at that time. Defendant then drove his family to the birthday party where an altercation ensued between defendant and Katie after defendant again attempted to broach the subject regarding his mother’s missing belongings. Deputy Ryan Anear of the Jefferson Parish Sheriffs Office was dispatched to Chuck E. Cheese on Veterans Boulevard in Metairie, where he encountered defendant, who had called the police to report that he had been punched in the face by his sister-in-law Katie. However, according to Katie and her husband Scott, when defendant angrily confronted Scott about his mother’s belongings, Katie attempted to intervene at which time defendant berated her and then “chest bumped” her, prompting her to slap him in the face. When Deputy Anear advised defendant that Katie would not be arrested, but rather issued a misdemeanor citation for simple battery, he became upset, indicating his desire to have Katie taken to jail. Defendant then left the scene, refusing to provide a statement, and thus, a citation was never issued. Katie and Scott, who also did not live in the area, were advised to stay somewhere other than Denis Haydin’s house,[3] if possible, since they suspected that defendant might go there. Approximately one hour later, Deputy Anear responded to a call of a reported battery at Denis’s residence on Canterbury Lane. Upon arrival, Deputy Anear again encountered Katie and Scott, who explained that when they arrived at Denis’s house, defendant was standing outside of his truck yelling and “bouncing around” while on his phone. After informing the person on the phone that he was going “to beat this bitch up,” defendant walked straight up to Katie, knocked a box |,qout of Katie’s hands, and started hitting her and Scott before attempting to flee in his truck, which was being driven by defendant’s wife. Katie testified that she remembered being hit twice by defendant, the first time did not cause her injury, but the second time defendant punched her in the middle of her face with such force that she fell to the ground. Katie described that blood “gushed” from her nose and mouth and that she could not see or breathe. Scott tried to stop defendant from leaving the scene by standing in front of defendant’s truck, as defendant instructed his wife to run him over. When Scott would not move, defendant got out of his truck with a broken glass bottle in hand and started to chase Scott. Defendant eventually returned to his truck and left the scene. Deputy Anear noted that Katie was sitting in the driveway in a pool of her own blood and that Scott had “some visible marks on his face.” Katie was subsequently transported to the hospital for treatment of her injuries. Dr. Ramiz Khalaf, who treated Katie at the hospital, testified that Katie sustained a broken nose and had considerable swelling to her eye. At trial, defendant presented a different version of events. According to Ms. Jolly, who was with defendant and his wife at the time of the incident, Katie and Scott arrived at Denis’s house and began yelling at defendant and his wife. Katie then approached defendant and threw a box at him, which defendant knocked away. She further testified that Katie punched defendant in the face and spit on him, prompting defendant to “slap” Katie. She recalled that defendant and Scott then began fighting with one another. Ms. Jolly further claimed that Scott’s son brought his father a drinking glass which he used to hit defendant. Defendant’s wife Brandy testified in accordance with Ms. Jolly’s account of the incident. . ASSIGNMENT OF ERROR NUMBER ONE (Sufficiency of the Evidence) In his first assigned error, defendant challenges the sufficiency of the evidence used to convict him of second degree battery. First, he contends that the State failed to prove that Katie suffered “serious bodily injury,” and secondly, that the evidence presented at trial proved he acted in self-defense when he slapped Katie.' In reviewing the sufficiency of the evidence, an appellate court must determine if the evidence, whether direct or circumstantial, or. a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Howard, 15-473 (La. App. 5 Cir. 12/9/15), 182 So.3d 360, 363. Under the Jackson standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, a reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La. App. 5 Cir. 4/15/08), 985 So.2d 234, 240. In the present case, defendant was convicted of second degree battery. La. R.S. 14:34.1(A) provides, in pertinent part: “Second degree battery is a battery when the offender intentionally inflicts serious bodily injury.”[4] La. R.S. 14:34.1(B)(3) defines “serious bodily injury” as “bodily injury, which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.” | sIn the present case, defendant does not contest that a battery occurred.' However, he contends that his actions constituted simple battery, rather than second degree battery, because 'the State failed to prove Katie suffered “serious bodily injury.” Defendant specifically -claims that a broken nose that did not require surgery does not reach the threshold of “serious bodily injury” necessitated by the statute’s definition. In State v. Mullins, 537 So.2d 386 (La. App. 4th Cir. 1988), the victim, who stood at five feet five inches, and the defendant, who was six feet tall, were driving home when an argument ensued. The victim and the defendant slapped each other, causing the victim to stop the car and get out. The defendant then followed her, grabbed her by the shirt, and punched her in the nose, breaking it. Afterwards, the two drove home, and once the defendant fell asleep, the victim went to her mother’s home and then to an area hospital for medical treatment of her broken nose. On appeal, the Fourth Circuit found that the evidence presented was sufficient to sustain the defendant’s conviction for second degree battery. In finding that the defendant possessed the requisite specific intent to inflict serious bodily injury, the appellate court noted, “when a larger man punches a smaller woman in her nose with enough force to break it, that bodily injury involves extreme physical pain.” Id. at 892'. In State v. Accardo, 466 So.2d 549 (La. App. 5th Cir. 1985), writ denied, 468 So.2d 1204 (La. 1985), the twenty-one-year-old male defendant struck the seventeen-year-old female victim in the" head with either his fist or a blackjack after she refused his ■sexual advances. Regarding her injuries, the victim testified at trial that she was “stunned” and her head was swollen. On appeal, this Court found the evidence sufficient to establish that the defendant inflicted “serious bodily injury” on the victim even though “nowhere in her testimony did the victim, speak of losing consciousness, extreme pain (or any pain), disfigurement, or impairment [ñof a body function or part.” In affirming the defendant’s conviction, this Court noted that the victim did testify to receiving a blow to the head with either the defendant’s fist or a blackjack; that the injury suffered by the victim did cause pain and swelling to her head; and that when a twenty-one-year-old man strikes a seventeen-year-old girl on the head with either his fist or a blackjack, there is a substantial risk of death, serious injury, or possible disfigurement. Id. at 552-53. See also State v. Stowe, 93-2020 (La. 4/11/94), 635 So.2d 168 (where the Louisiana Supreme Court found that, reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the State proved the defendant had intentionally inflicted extreme physical pain on the officer without his consent). Likewise, in this case, we find that the evidence was sufficient to establish all the elements of the offense of second degree battery, including that of “serious bodily injury” being challenged by defendant. At trial, the State presented evidence that after an altercation at Chuck E. Cheese, defendant and Brandy drove to Denis’s house where Katie and Scott were staying. Upon Katie and Scott’s arrival, they observed defendant .standing outside of his truck yelling and “bouncing around” while on his phone. After informing the person on the phone that he was going “to beat this bitch up,” defendant, who is larger than Katie, rushed towards her, knocked a box out of her hands, and started hitting her and Scott before attempting to flee in his truck. Katie testified that defendant punched her with a closed fist in the middle of her face with such force that she fell to the ground. Katie described that she could not see or breath as blood “gushed” from her nose and mouth. When the police arrived, Katie reported'her pain as a ten on a scale from one to ten. Katie was then transported to the hospital and treated by Dr. Khalaf for complaints regarding pain and swelling to her hose and eye. At the hospital, Katie reported her pain as a five on a scale of one to ten. After several |7tests, it was determined that Katie had sustained a broken nose and considerable swelling to her eye, for which Dr. Khalaf prescribed her pain medication. In the present case, while the evidence did not show that Katie’s injury involved unconsciousness, disfigurement, protracted loss or impairment of the function of a bodily member/organ, or mental faculty, or a substantial risk of death, the evidence did establish that Katie’s injury caused her extreme physical pain.[5] Moreover, as noted by the Fourth Circuit in State v. Mullins, supra, “when a larger man punches a smaller woman in her nose with enough force to break it, that bodily injury involves extreme physical pain.” Accordingly, viewing the evidence presented at trial in the light most favorable to the prosecution, we conclude that a rational trier of fact could have determined that the elements of the crime of second degree battery were proven beyond a reasonable doubt; thus, defendant is not entitled to a reduction of his conviction to the lesser offense of simple battery.[6] In his appellate brief, defendant also contends that he presented sufficient evidence at trial to prove by a preponderance of the evidence that he was acting in self-defense when he struck Katie. The fact that an offender’s conduct is justifiable, although otherwise criminal, constitutes a defense to prosecution for any crime based on that conduct. La. R.S. 14:18; State v. Patterson, 10-415 (La. App. 5 Cir. 1/11/11), 63 So.3d 140, 148, unit denied, 11-338 (La. 6/17/11), 63 So.3d 1037. The use of force or violence upon- the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass |sagainst property in a person’s lawful possession, provided that the force or violence used,must be reasonable and apparently necessary to prevent such offense. La. R.S, 14:19(A); State v. Steele, 01-1414 (La. App. 5 Cir. 9/30/02), 829 So.2d 541, 547, unit denied, 02-2992 (La. 9/19/03), 853 So.2d 632. The aggressor or the person who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue ' the conflict. La. R.S. 14:21; State v. Howard, 182 So.3d at 363. In a non-homicide case, the defendant has the burdefr of proving by a preponderance of the evidence that his actions were in self-defense or in defense of others. The defense of self-defense in a non-homicide situation requires a dual inquiry: an objective inquiry into whether the force used-was reasonable under the circumstances and a subjective inquiry into whether the force was apparently necessary. State v. Nailor, 10-1062 (La. App. 5 Cir. 11/15/11), 78 So.3d 816, 821-22, unit denied, 11-2780 (La. 4/27/12), 86 So.3d 626. In the present case, the jury was presented with conflicting testimony regard-, ing the altercation at Denis’s house. The State presented testimony that upon Katie and Scott’s arrival at Denis’s house, they observed defendant standing outside of his truck yelling and “bouncing around” while on his phone. After informing the person on the phone that he was going “to beat this bitch up,” defendant, unprovoked, rushed towards her, knocked a box out of her hands, and started hitting her and Scott' before attempting to flee in his truck. " Defendant presented a contrasting version of events to the jury through the testimony of Ms. Jolly, a long-time family friend, and his wife Brandy. In their version, Katie approached defendant, threw the box she was holding at him, punched him in the face and spit on him, which prompted defendant to “slap” Katie. 19In the present case, the jury clearly chose to believe Katie and Scott’s account of the events over that of defendant’s version. The credibility of witnesses is within the sound discretion of the trier of.fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Howard, 182 So.3d at 364. It is not the function of the appellate court to assess credibility or reweigh the evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442, 443. In light of the evidence presented at trial, we find that a rational trier of fact could have determined that defendant did not prove by a preponderance of the evidence that he acted in self-defense. Accordingly, defendant’s arguments relating to the sufficiency of the evidence are without merit. ASSIGNMENT OF ERROR NUMBER TWO (Authentication of Text Message) In his second assignment of error, defendant argues that the trial court erred in admitting a text message, allegedly sent by defendant to his brother Scott, into evidence without proper authentication. Defendant claims that because only a printout of a screenshot of the text message was presented at trial, rather than the actual cell phone on which the text message was received, or testimony from the officer who took the screenshot, the message should not have been admitted into evidence. At trial, defendant’s brother, Scott, testified that on the day of the incident, defendant sent him a text message after he and his wife had left Chuck E. Cheese, and before they arrived at them brother Denis’s house, which read: So who gonna finish this? You or her let me know im bout that shit! So me and you can finish talking lime [sic] we was before she came up or whatever you want to do? Let me know! Defendant objected to the introduction of the text message, as being “unauthenticated,” claiming the State was attempting to provide a screenshot of the text .rather than the actual cell phone containing the text message. In response, the 11flState argued that the text message could be authenticated by the owner of the phone and recipient of the text message, Scott Hay-din. The trial court instructed the State to lay a foundation before the text message would be permitted into evidence. Thus, the State questioned Scott, as follows: STATE: Alright, Scott, 2014, did you have a cell phone? SCOTT: Yes. STATE:' Alright, Who was the carrier, or provider, for your cell phone service? SCOTT: I believe it was AT & T. STATE: Did you receive on that phone, communications like phone calls and text messages? SCOTT: Yes. • STATE: Did you have in your phone, a phone number for your brother Jeffery? SCOTT: Yes. STATE: Did you have him saved in your contacts as “Jeffery”? If you remember. SCOTT: I believe so, yes. STATE: Alright. Has he communicated to you before on the number that you had saved “Jeffery” as? SCOTT: That was—I believe that was the first time he actually texted me. We’ve only had actual voice calls— STATE: I got you. SCOTT:—up until that point. STATE: Alright. Now that same number “Jeffery” that he would call you from, you also received a text message from that same Jeffery, correct? SCOTT: Yes. STATE: As the same number, because it’s your phone, and you would know? J^SCOTT: Yes. STATE: After the incident, did you take any pictures, or copies or photographs of the text message you received from Jeffery? SCOTT: The police officer on the scene, took a picture of my cell phone, with a camera. STATE: You were present? SCOTT: Yes. STATE: You provided that cell phone, that was yours, to that officer? SCOTT: Well when you say that was my cell phone, let me be straight here. This—the cell phone was in my possession, the cell phone actually belonged to my employer; it was a work cell phone. But I had full use of the cell phone, twenty-four hours a day. STATE: So you would be custodian, operator of the phone? SCOTT: Correct. The State again moved to admit the text message, and defendant objected, noting that if the police officer who took the photograph of the text testified, he would withdraw his objection. The trial court denied defendant’s objection, noting, “it goes to the weight and admissibility.” Authentication of evidence is required in order for evidence to be admissible at trial. La. C.E. art. 901 states that “authentication” is a “condition precedent to admissibility” that is “satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.” State v. Lee, 01-2082 (La. App. 4 Cir. 8/21/02), 826 So.2d 616, 624, writ denied, 02-2549 (La. 9/5/03), 852 So.2d 1019. La. C.E. art. 901(B) provides an illustrative, though not exhaustive, list of examples of authentication or identification that conforms with the requirements of the article. Generally, the standard applied by state and federal courts alike with respect to the authentication of a document is whether there is sufficient evidence 11?from which a reasonable juror could find the proposed evidence is what the proponent claims it to be. State v. Smith, 15-1359 (La. App. 4 Cir. 4/20/16), 192 So.3d 836, 840. In the present case, the text message at issue was properly authenticated by Scott, the recipient of the text, on a cell phone used exclusively by him and was sent by defendant, whose contact information was saved into Scott’s phone and who had communicated with him before via the same number used in the text message sent the afternoon of November 21, 2014. Moreover, while the officer who took the picture of the text message was not called at trial to authenticate the screenshot, Scott testified that he was present when the picture was taken and testified that the text message presented at trial was the text that the officer photographed and that the text photographed was the one he received from defendant on the date of the incident. Accordingly, this assigned error is without merit. ASSIGNMENT OF ERROR NUMBER THREE (Excessive Sentence) In his third assigned error, defendant challenges his sentence as excessive. In the present case, as a second felony offender convicted of second degree battery, defendant faced a sentencing range of between four and sixteen years. See La. R.S. 14:34.1 and La. R.S. 15:529.1(A)(1). The trial court sentenced defendant to a mid-range sentence of ten years at hard labor. Defendant now contends that the “maximum sentence”[7] was unwarranted as he was not the “worst kind of offender.” He specifically maintains that his actions |1sin this case amounted to a simple .battery, having only “slapped” Katie once in the face and in self-defense, after Katie continuously hit him and spit on him. Moreover, defendant asserts that the sentence . imposed by the trial court is not comparable to like offenses in other courts. He further claims the record is lacking in consideration by the trial judge of any mitigating circumstances as defined by La. C.Cr.P. art. 894.1, and that his alleged excessive punishment is out of proportion to the seriousness of the offense committed, equating to nothing more than a “purposeless and needless infliction of pain and suffering.”[8] The Eighth Amendment of the United States Constitution and Article 1, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even when it is in the applicable statutory range, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so' disproportionate as to shock .the court’s sense of justice. State v. Holmes, 12-579 (La. App. 5 Cir. 5/16/13), 119 So.3d 181, 200, writ denied, 13-1395 (La. 1/10/14), 130 So.3d 318. The trial judge is afforded wide discretion in determining sentences, and the court of appeal will not set aside' a sentence for excessiveness if the record supports the sentence imposed: La. C.Cr.P. art. 881.4(D). A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion in sentencing. The. issue on appeal is whether the trial court abused its discretion, not whether another sentence might 1 uhave been more appropriate. State v. Ross, 13-924 (La. App. 5 Cir. 5/28/14), 142 So.3d 327, 333. In the present case, while the sentence is severe, we cannot say that the trial court abused its discretion in sentencing defendant as a second felony offender to ten years at hard labor. Prior to originally sentencing defendant to five years, the trial court considered a statement submitted on behalf-of. the victim expressing that the incident caused her a high degree of physical pain and suffering as well as emotional pain and suffering and imploring the court to impose a sentence commensurate with her suffering. Additionally, the trial, court heard; defendant’s apology to his family, in which he accepted full responsibility for his actions on that day and -asked for the court’s understanding in light of the highly emotional situation on the day of the incident. Thereafter, the judge con-' sidered the testimony he heard at trial regarding the incident and specifically recalled a witness’s testimony that “he hit that woman like she was a man.” The trial court also articulated that he considered the sentencing guidelines set forth in La. C.Cr.P. art. 894.1 and specifically noted that considering defendant’s record, there was a “serious implication” that defendant may commit another crime, that defendant was in need of a custodial environment, and that any lesser sentence would deprecate the seriousness of the offense. Thereafter, at the sentencing on the multiple bill, the trial court was reminded by defense counsel that defendant was employed and was supporting his five children. In responding to defendant’s argument for leniency, the prosecutor referenced defendant’s criminal record as well as the victim’s pain and suffering as a result of this incident. The trial court then sentenced defendant to ten years at hard labor. In light of these factors considered by the trial court, we cannot say that the imposition of a ten year sentence was excessive. We particularly note that | ^defendant, who was larger in stature, punched Katie in the face with a closed fist with such force that she was knocked to the ground and immediately began bleeding profusely from her nose and mouth causing her to not be able to see or breathe. As" a result of the punch, Katie sustained a broken nose and considerable swelling to her eye, for which she received medical treatment at the hospital. We further note that defendant was a multiple offender and had prior felony convictions, including the drug offenses referenced in the multiple offender: bill of information. Additionally, although the trial court thought it was imposing the maximum sentence, defendant.actually received a mid-range sentence of ten years. We have also reviewed the range of sentences imposed in other second degree battery cases and recognize that in some instances, lesser sentences have been imposed under more severe factual circumstances than' those' presented herein. Nonetheless, while a comparison of sentences imposed for similar crimes may provide some insight, “it is well settled that sentences must be individualized to the particular offender and to the particular offense committed.” State v. Batiste, 594 So.2d 1 (La. App. 1st Cir. 1991). Accordingly, under- the circumstances presented herein, we find that defendant’s sentence of ten years is not excessive and that the trial court did not abuse its discretion in imposing such a sentence. ASSIGNMENT OF ERROR NUMBER FOUR (Improper Recitation of Defendant’s Criminar History) In his final assignment of error, defendant contends that the State recited an erroneous criminal history for defendant at the multiple bill hearing which caused him prejudice. Specifically, defendant .maintains that the State referenced a simple robbery conviction when detailing for the trial court defendant’s criminal history; however, the record contained no proof of such a conviction. He concludes that this incorrect recitation of his criminal history diminished his reputation before the |1ficourt and resulted in his being sentenced to the maximum allowable sentence under the multiple bill. On September 1, 2016, prior to resen-tencing defendant as a second felony offender, the trial court permitted the State and defense counsel to make a statement. During this time, the State discussed the facts of the case and further referenced defendant’s criminal history, which it alleged included a conviction for simple robbery. On appeal, defendant claims he was prejudiced by the State’s reference to the simple robbery conviction for which there was no proof in the record. However, defendant did not object to the alleged erroneous and prejudicial reference to the pri- or conviction at the time of the occurrence, and therefore, he is precluded from raising this issue on appeal. See La. C.Cr.P. art. 841. Further, defendant did not mention this issue in his motion to reconsider sentence based on excessiveness. ERRORS PATENT REVIEW We have reviewed the record for errors patent in accordance with La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990). We note one error that requires corrective action. In particular, both the original uniform commitment order and the multiple bill uniform commitment order contain the incorrect offense date. Specifically, these commitment orders reflect the date of the offense as December 11, 2014, when the record indicates that the offense was committed on November 21, 2014. In accordance with established procedure, we remand this case to the district court with instructions to correct the uniform commitment orders to reflect the proper date of the offense. We further instruct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected uniform commitment order(s) to the officer in charge of the institution to which defendant has been | ^sentenced and the Department of Corrections’ legal department. See State v. Lyons, 13-564 (La. App. 5 Cir. 1/31/14), 134 So.3d 36, 41, writ denied, 14-481 (La. 11/7/14), 152 So.3d 170. Accordingly, for the reasons set forth herein, defendant’s conviction and enhanced sentence for second degree battery are affirmed. The matter is remanded for the correction of an error patent as noted herein. CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS . The multiple bill was filed on June 27, 2016. . Subsequent to the granting of his appeal, defendant filed a motion to reconsider his ten-year multiple offender sentence. Pursuant to its authority under La. C.Cr.P, art, 916(3), the trial court denied defendant’s motion to reconsider sentence on September 27, 2016. . Denis Haydin is the brother of Scott and Jeffery Haydin. . A battery is defined in La. R.S. 14:33 as "the intentional use of force or violence upon the person of another.” . At trial, Katie testified that since the incident, she takes pain medication for migraines that have increased in severity and suffers from blurry vision, However, Katie could not positively attribute these conditions to the incident because she suffers from an illness known as Huntington’s Disease, which had presented similar symptoms ih the past. In fact, when confronted on cross-examination with her medical records, it was established that Katie had been suffering from blurry vision prior to the incident. . In his appellate brief, defendant relies on State v. Helou, 02-2302 (La. 10/23/03), 857 So.2d 1024, to support his argument that the evidence was insufficient to sustain his conviction for second degree battery. In Helou, the Louisiana Supreme Court reversed defendant's conviction for second degree battery on the basis that the State failed to offer any evidence of extreme physical pain. Rather, the evidence presented dealt solely with the amount of blood lost by the victim, and the State’s direct examination of its witnesses completely avoided the subject of pain. The instant case is clearly distinguishable from the Helou case insofar' as the State, at trial in the present matter, introducéd evidence relating to the victim’s extreme physical pain. . It appears that both the trial court and defense counsel erroneously thought that ten years was the maximum possible penalty defendant could have received, In imposing sentence, the trial court referenced the 2014 version of La. R.S. 14:34.1, which was no longer in effect at the time of the commission of the instant offense. Specifically, prior to imposing defendant’s original and enhanced sentences, defendant was informed that he faced a sentencing range of zero to five years for his underlying conviction of second degree battery and two and one-half to ten years as a second felony offender. Defendant committed the instant offense on November 21, 2014. The 2014 amendment by Act No. 722, effective August 1, 2014, increased the sentencing range for second degree battery from zero to five years, to zero to eight years, See La. R.S. 14:34.1. .Thus, as a second felony offender, defendant faced a sentencing range between four and sixteen years of imprisonment. La. R.S. 15:529.1(A)(1), . In the present case, defendant filed a motion to reconsider sentence, in which he merely alleged that the sentence, imposed was excessive. La. C.Cr.P. art. 881.1 requires a motion for reconsideration of sentence to set forth specific grounds upon which the motion is based. The failure to state the specific grounds upon which a motion to reconsider is based precludes a defendant from raising issues relating to statutory errors or deficiencies such as compliance with La. C.Cr.P. art. 894.1 and limits a defendant to a review of the sentence for constitutional excessiveness only. State v. Hunter, 11-787 (La. App. 5 Cir. 4/24/12), 94 So.3d 797, 800.