982 So.2d 225 (2008)
TALLULAH CONSTRUCTION, INC. and Billy Ray Dew
v.
NORTHEAST LOUISIANA DELTA COMMUNITY DEVELOPMENT CORP., Jamie Lee Strange, Sr., Lashonda Robinson Strange, and Ardell Williams Washington.
No. 2007-CA-1029.
Court of Appeal of Louisiana, Fourth Circuit.
April 23, 2008.
Rehearing Denied June 4, 2008.
*226 James A. Rountree, Rountree Law Offices, Monroe, LA, for Plaintiff/Appellee, Tallulah Construction, Inc.
Raymond Lee Cannon, Law Offices of Raymond Lee Cannon, L.L.C., Tallulah, LA, for Defendant/Appellant, Northeast *227 Louisiana Delta Community Development Corporation.
(Court composed of Judge DAVID S. GORBATY, Judge LEON A. CANNIZZARO, JR., Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
Defendant-Appellant appeals the trial court's award of damages to the Plaintiff-Appellee. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
This case concerns a dispute arising out of an alleged oral contract between Plaintiffs-Appellees Tallulah Construction Company and its president, Billy Ray Dew, Sr. (hereinafter collectively "Tallulah"), and Defendant-Appellant Northeast Louisiana Delta Community Development Corporation (hereinafter "Northeast" or "Appellant"). Tallulah asserts that it made an agreement with Northeast, through Mr. Dew and Northeast's chief executive officer, Moses J. Williams ("Mr. Williams"), to build two houses in Tallulah, Louisiana for compensation. Specifically, Tallulah submits that Mr. Dew and Mr. Williams verbally set the contract price for building the two houses at 606 and 608 E. Darrow Street for $66,500.00 and $66,700.00, respectively, and that this price was calculated based upon a value per square foot of construction.
Upon completion of construction, Northeast sold the residence at 606 E. Darrow Street on March 14, 2005 for $92,500.00 and the residence at 608 E. Darrow Street for $86,000.00 on April 6, 2005.[1] Tallulah asserts that because it never received the agreed compensation from Appellant, Tallulah filed liens in the amount of $66,500.00 and $66,700.00 on April 11, 2005. Tallulah acknowledges that it received a partial payment from Northeast in the amount of $25,000.00 prior to the filing of the liens.[2]
On June 20, 2005, Tallulah filed a petition for damages, asserting that Northeast contracted with Tallulah to provide labor and materials used in the construction of two houses at 606 and 608 East Darrow Street, and that as a result of its failure to honor its commitment for the value provided by Tallulah, Northeast was indebted to Tallulah in the amount of $107,100.00. The petition for damages also referenced the liens filed with respect to the two properties under the Private Works Act. A Judgment on a Rule to Cancel and Erase Lien Affidavits, dated July 15, 2005, declared that the lien affidavits filed by Tallulah had been filed illegally.
On July 21, 2005, Northeast filed dilatory exceptions of vagueness and ambiguity in the petition, improper joinder of parties and peremptory exception of no right of action; Tallulah filed a memorandum in opposition. The trial court issued a judgment dated December 9, 2005, overruling the exceptions.[3] After several months of discovery, on October 30, 2006, Northeast filed a peremptory Exception of No Cause of Action, No Right of Action, Res Judicata, Extinguishment of Rights and Claim Preclusion. On that date, the trial court *228 denied Appellant's exceptions and proceeded to trial, at which time it received evidence and heard testimony from both Mr. Williams and Mr. Dew. On November 3, 2006, the court found in favor of Tallulah Construction, Inc. and against Northeast in the amount of $88,200.00.
In its Reasons for Judgment, the trial court discussed the evidence of an agreement between Tallulah and Northeast to construct the two homes for compensation through the testimony of Mr. Williams. First, the court noted that Mr. Williams did not dispute that he made an agreement with Mr. Dew to build two houses on Darrow Street; rather, Mr. Williams testified that they did not agree to a specific price for the projects. The court further noted Mr. Williams' testimony that Northeast merely agreed to reimburse Mr. Dew for material and labor costs that Tallulah provided,[4] which Mr. Williams estimated were approximately $60,000 to $70,000 for both houses. The court concluded that Tallulah and Northeast, through Mr. Dew and Mr. Williams, agreed that Tallulah would build the houses on Darrow Street for compensation, but that the evidence was ambiguous as to price.[5]
Next, relying on Dubois Construction Co. v. Moncla Construction Co., Inc., 39,794 (La.App. 2 Cir. 6/29/05), 907 So.2d 855[6] and Morphy, Makofsky & Masson v. Canal Place 2000, 538 So.2d 569 (La.1989), the court found that although no definitive agreement had been reached with regard to price, this was not fatal to the agreement, and that the parties also had a recent history of contracting for the construction of homes in Tallulah, Louisiana.[7] The court held that the rule in Morphy and Dubois, requiring a court to supply a missing price in an otherwise valid agreement, applied to the facts of the instant case. Thus, the court found that, under Morphy, a reasonable sum for Tallulah's services must be calculated. The court noted that although the parties had recently contracted for $48.00 per square foot, both parties were cognizant that the construction projects in the instant case differed because Tallulah was not supplying all the materials, fixtures, and labor.
The court determined that, considering the totality of the circumstances, the compensation Tallulah sought to recover for the construction of 606 E. Darrow Street, $66,500.00 ($38.83 per square foot), and *229 $66,700.00 for 608 E. Darrow Street ($42.03 per square foot),[8] was fair and reasonable, but that it had to be offset by the value of the materials provided by Northeast. Because the court found that neither party presented any documentary or other evidence specifically as to the value of the stud walls, it declined to adopt the estimated value by either party, and set the value at $7,500.00,[9] in addition to a credit of $2,500.00 per house (for a total of $10,000.00 per house) for all other labor, materials, appliances and fixtures supplied by Northeast. Accordingly, the court rendered judgment in favor of Tallulah, finding that the total principal amount due was $88,200.00, with judicial interest and costs, from the date of the judgment[10] as follows:
606 East Darrow Street
The court subtracted the amount already paid by Northeast ($20,000.00) and the amount of the materials and labor supplied by Northeast ($10,000.00) from $66,500.00 (the contract amount) to arrive at a total of $36,500.00.
608 East Darrow Street
The court subtracted the amount already paid by Northeast ($5,000.00) and the amount of the materials and labor supplied by Northeast ($10,000.00) from $66,700.00 (the contract amount) to arrive at a total of $51,700.00.
STANDARD OF REVIEW
"[A trial court's] determination of the existence of a contract is a finding of fact, not to be disturbed unless clearly wrong." Dubois, 907 So.2d at 857 (citing Crowe v. Homesplus Manufactured Housing, Inc., 38,382 (La.App.2d Cir.6/21/04, 877 So.2d 156)). Likewise, "the standard for reviewing the award of damages for breach of contract is whether the trial court abused its discretion." Mount Mariah Baptist Church, Inc. v. Pannell's Associated Electric, Inc., 36,361, p. 11 (La. App. 2 Cir. 12/20/02), 835 So.2d 880, 888 (citing Hernandez v. Martinez, XXXX-XXXX (La.App. 5 Cir. 2/28/01), 781 So.2d 815).[11]
DISCUSSION
Assignment of Error # 1
Appellant first asserts that the trial court erred as a matter of law when it denied its Exception of No Cause of Action, No Right of Action, and Res Judicata. Appellant argues that no written contract existed, no allegations of an oral contract were made, and that Tallulah improperly offered lien affidavits as evidence of a contract. Appellant further maintains that Appellee's petition for damages based its claims under a Private Works Act theory of recovery, which the Appellant argues the trial court erroneously disregarded. Additionally, relying upon Newt Brown, Contractor, Inc. v. Michael Builders, Inc., 569 So.2d 288 (La.App. 2 Cir. 10/31/90), Appellant argues that Tallulah's case should have failed based upon its non-compliance *230 with the Private Works Act, as Tallulah could not legally avail itself of the provisions of the Act because Tallulah is not in a class protected by the labor and materials lien provisions.
Conversely, Tallulah submits that Appellant fails to differentiate between lien rights under the Private Works Act and Appellant's cause of action to recover monetary damages for the houses. Tallulah further asserts that Newt Brown, supra, is distinguishable from the facts of the instant case because in this case, a contractual relationship existed between Northeast and Tallulah.
Newt Brown involved a claim by a subcontractor, Newt Brown Contractor, Inc. ("Brown"), who filed suit against the following defendants: the general contractor, Michael Builders, Inc. ("Michael"); Premier Assurance and Casualty Company ("Premier"), a surety company; and Montessori School of Shreveport, Inc. ("the School"). Newt Brown, 569 So.2d at 289. On June 23, 1988, the School contracted with Michael for construction work on the School, and Michael in turn sub-contracted with Brown to supply dirt. Id. Gary Brown, the owner of Brown, testified at trial that its bill for the labor and materials was $16,949.05, which remained unpaid. Id. The School filed and recorded a notice of termination of work in the mortgage records of Caddo Parish on November 16, 1988; on January 9, 1989, 53 days later, Brown filed and recorded into the mortgage records of Caddo Parish an affidavit of lien and privilege affecting the School property. Id. Brown testified that he subsequently released his privilege on the property, but argued that the claim against the School pursuant to the Private Works Act was valid. Id.
Brown filed suit on June 28, 1989 under the Private Works Act, alleging that the School did not require the general contractor to pay a bond of solvent, legal surety.[12]Id. At trial, the court found that notice of contract was not filed erroneously due to proper bond not being attached; thus, for Brown to preserve its claim, it should have filed its statement of claim within 30 days of the filing of notice of termination of the work. Id. at 290. Because the claim was filed 53 days after the notice of termination, the court held that the claim was extinguished. Id.
On appeal, the Second Circuit affirmed, finding that the viability of Brown's claim was plainly limited by La. R.S. 9:4823(A)[13]; therefore, the claim and privilege securing *231 it were extinguished if not preserved through 9:4822 or an action not brought against the owner within one year after the time limits established by 9:4822. Id. Likewise, the court found that Brown's argument that the bond was not executed by a solvent, legal surety and notice of the contract thus not properly filed lacked merit pursuant to the language in 9:4811(C).[14]Id. at 291. Finally, the court held that Brown could not assert a claim under unjust enrichment principles, as the School paid an equivalent value to Michael for the materials and services it received. Id. at 292. Brown also had an adequate remedy at law against the School, but allowed it to lapse. Id. Moreover, the court noted that Brown had pursued its legal remedy against Premier and Michael and successfully obtained a judgment against both parties. Id.
We find that Newt Brown is inapposite to the facts of the instant case, as the trial court's judgment in this case was not based upon Tallulah's claims that were asserted under the Private Works Act, but was rather a finding based upon Tallulah's claim for payment per the agreement between Northeast and Tallulah (through Mr. Williams and Mr. Dew, respectively) that Tallulah would build the two homes on Darrow Street for compensation. Therefore, we find that Appellant's reliance upon Newt Brown is misplaced in this instance.
Furthermore, as the trial court noted, Tallulah's petition for damages alleged that Appellant had not honored its commitment to pay Tallulah for the costs of labor and materials with respect to the construction of the two homes on Darrow Street. The petition further alleged that Appellant did not dispute its debt to Tallulah. We agree with the court's statement at trial that although the petition for damages asserted claims under the Private Works Act, the fundamental obligation alleged in the petition was that Tallulah provided material and labor to Appellant for which it has not been paid.[15]
It is well-settled that pleadings shall be construed by a court to achieve justice, to arrive at truth, and to allow litigants their day in court. La. C.C.P. art. 865 ("[e]very pleading shall be construed as to do substantial justice"); Kuebler v. Martin, 578 So.2d 113, 114 (La. 1991)(per curiam).[16] In Kuebler v. Martin, the Louisiana Supreme Court held that pursuant to the mandates of Article 865, *232 "[w]hen it can reasonably do so, the court should maintain a petition against a peremptory exception so as to afford the litigant an opportunity to present his evidence." Kuebler, 578 So.2d at 114. This Court has similarly held that "[i]t is a long-standing tenet of this state's jurisprudence that, whenever possible, the court should uphold a plaintiff's petition as against a peremptory exception so as to afford the plaintiff an opportunity to present the evidence in court." Cooper v. Public Belt Railroad, XXXX-XXXX, p. 3 (La.App. 4 Cir. 12/20/00), 776 So.2d 639, 641 (citing Kuebler, supra). Accordingly, we find that the trial court correctly determined that the relevant issue in this case was whether any remedy to Tallulah was available under the facts as alleged. See Cooper, 776 So.2d at 641 (citing Kuebler, supra). This assignment of error lacks merit.
Assignment of Error # 2
Appellant next argues that the trial court erred as a matter of law in failing to grant the motion for directed verdict at the close of Appellee's case-in-chief because Tallulah did not present any written or corroborating evidence with respect to costs it incurred pursuant to La. Civ.Code. Art. 1846.[17] For the reasons discussed in the assignment of error which follows, we find that this assignment of error lacks merit.
Assignment of Error # 3
In the third assignment of error, Appellant submits that the trial court erred as a matter of law in awarding damages to Tallulah. Appellant argues that Tallulah failed to produce any written or corroborating evidence to prove the existence of a contract pursuant to Louisiana Civil Code Article 1846. Conversely, Tallulah submits that Mr. Dew is a credible witness to establish the oral contract, and that sufficient corroborating evidence was presented to establish an agreement between Northeast and Tallulah.
This Court recently held that "[a] party to a lawsuit may serve as his own credible witness for the purpose of satisfying this article, and, although the party must show other circumstances which corroborate his claim, only general corroboration is required, not independent proof of every detail of his testimony." Gutierrez v. Moezzi, XXXX-XXXX, p. 9 (La. App. 4 Cir. 4/11/07), 957 So.2d 842, 848.[18] Therefore, Mr. Dew, although a party to the suit, qualifies as a credible witness for purposes of Article 1846.[19] Additionally, *233 we find that Tallulah demonstrated other corroborating evidence, pursuant to Article 1846, which established the existence of an agreement between Northeast and Tallulah, most notably through Mr. William's testimony.[20] Mr. Williams testified as follows:
Q. I ask you again, Mr. Williams, it is true that [Northeast] contracted with Tallulah Construction to build those two houses?
A. When you say, contract, we agreed that he would build the houses, but did we agree  was there a written contract or was it a contract for a certain sum of money, no.
Q. Did you know you were gon' have to pay Tallulah Construction Company
A. Yes.
Q. to build those houses?
A. Yes.
Q. Did you  are you saying that you didn't agree to a specific price?
A. Do you want me to explain?
Q. I'm just asking you if you're saying that you did not agree to a specific price?
A. We had several different agreements. And  and we did not agree to a  we never agreed to a specific price. We agreed to  and we first agreed to that we would allot him so much per square foot.
Louisiana Civil Code Article 1906 provides that "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ.Code art. 1906. Thus, Mr. Williams' own testimony plainly establishes the existence of an agreement between Tallulah and Northeast to build the two houses on Darrow Street for compensation.
Because a valid contract existed between the parties, but no agreement as to price, equity principles mandate that Tallulah receive compensation for a reasonable value of goods and/or services rendered. See Morphy, 538 So.2d at 574-75. It is well-settled that where an agreement exists but the price to be paid is omitted, the court, in the context of contractual interpretation, shall supply the missing price. Morphy, 538 So.2d at 574; Dubois, 907 So.2d at 857.[21] The technique or measure used to establish the price varies according to the circumstances of each case. Dubois, 907 So.2d at 857 (citing Morphy, supra). The method to determine the recovery typically amounts to the fair market value for the goods or reasonable value for the services that were the *234 object of the contract. Id. In this case, the trial court calculated what it determined to be the reasonable per square foot value of labor and materials provided by Tallulah, and did so in great detail. We find no error in the trial court's calculations in this case.
Finally, trial courts are vested with great discretion with regard to damage awards. Youn, supra n. 10. We find nothing in the record which evidences an abuse of the trial court's vast discretion with regard to its award of damages in this case. Appellant's second and third assignments of error are without merit.
Assignment of Error # 4
In the final assignment of error, Appellant maintains that the trial court's application of equity principles to determine the price of compensation due Appellees for labor and materials is manifestly erroneous.
We agree with the trial court's finding that the equity principles set forth in La. Civ. Code art. 2055 apply to the facts of the instant case. Article 2055 of the Civil Code provides as follows:
Equity, as intended in the preceding articles, is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another.
Usage, as intended in the preceding articles, is a practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation.
Furthermore, the Louisiana Supreme Court, when determining the reasonable value for the plaintiff's services in Morphy, held that although "there is no specific test which must be applied to determine the reasonable value for such services," the calculation "is a matter of equity depending upon the circumstances of each case." Morphy, 538 So.2d at 575 (quoting Jones v. City of Lake Charles, 295 So.2d 914 (La. App. 3d Cir.1974))(emphasis added). Louisiana Civil Code Article 1999 provides that "[w]hen damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages." La. Civ. Code art. 1999. Upon a careful review of the record, we find nothing which demonstrates that the trial court was unreasonable in its employment of equity principles to assess the amount of Tallulah's damages in this case. Therefore, in addition to the reasons discussed in the third assignment of error, we find no abuse of discretion on the part of the trial court. This assignment of error lacks merit.
CONCLUSION
The trial court's award of $88,200.00 in favor of Tallulah Construction, Inc. and Billy Ray Dew is hereby affirmed.
AFFIRMED.
NOTES
[1] In the original petition for damages, Tallulah named as defendants the individuals who purchased the homes at 606 and 608 E. Darrow Street, Jamie Lee Strange, Sr., Lashonda Robinson Strange, and Ardell Williams Washington. Tallulah filed a motion to dismiss the three individuals without prejudice, and the court granted the motion on October 30, 2006.
[2] $20,000.00 was allocated to 606 E. Darrow Street, and $5,000.00 was allocated to 608 E. Darrow Street.
[3] The judgment referenced a hearing date of September 22, 2005 for the exceptions.
[4] Mr. Williams testified at trial that at the time of the construction of the two homes in the instant case, Mr. Dew was "debarred" and unable to sign a construction contract; therefore, the construction projects on Darrow Street enabled Mr. Dew to keep his laborers working while Mr. Dew took steps to reinstate his license.
[5] The trial court noted the slight discrepancy in the amount of Tallulah's demand in its petition for damages ($107,100.00), a May 11, 2005 demand letter ($109,200.00), and the amount listed in Plaintiff's Exhibit P-8 ($108,200.00).
[6] The Dubois court found that "[t]he fact that the amount of compensation to be received for the services was not agreed upon does not vitiate the contract." Dubois, 907 So.2d at 857. The court also relied upon the Dubois court's statement that "[w]here an agreement exists but the price to be paid is not stated, the court in the context of contractual interpretation must supply the missing price. The technique or measure used to determine recovery varies according to the circumstances of each case." Id. (citing Morphy, 538 So.2d at 574-75)(emphasis added).
[7] The court cited Mr. Williams' testimony regarding Tallulah Construction's recent completion of construction on a house in Tallulah, Louisiana for Appellant at a turnkey contract price of $48.00 per square foot. Mr. Williams further testified that because Mr. Dew was prohibited to act as a general contractor for the construction of the homes in the instant case, Mr. Dew was unable to sign a conventional construction contract.
[8] The court noted that 606 E. Darrow Street was 1,713 square feet, and 608 E. Darrow was 1,587 square feet.
[9] Mr. Williams estimated that the value of the stud walls was approximately $10,000.00 per house, while Mr. Dew testified that the value was approximately $5,000.00 per house.
[10] The court acknowledged that Tallulah sought interest from the date the debt was due, but found that because the amount was not ascertainable until the date judgment was rendered, interest must be awarded from the date of judicial demand.
[11] See also Ambrose v. McLaney, XXXX-XXXX (La.App. 4 Cir. 5/16/07), 959 So.2d 529 ("[a]n appellate court's initial inquiry in reviewing a general damage award is whether the particular effects of the particular injuries on the particular plaintiff are such that there has been an abuse of the discretion vested in the trier of fact")(citing Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993)).
[12] The School admitted that Premier was not authorized to do business as a surety in Louisiana, but argued that Brown's claim was extinguished when Brown failed to timely file the lien or statement of claim pursuant to La. R.S. 9:4822. Id. The School then filed a motion for summary judgment, arguing that the Private Works Act allows only 30 days after notice of termination to file a claim or privilege, and that Brown's lien had been untimely filed 53 days after the notice of termination. Id. The School's motion for summary judgment was denied because the court found that genuine issues of material fact remained, as the claim could have been validly filed 60 days after the notice of termination pursuant to La. R.S. 9:4822(C). Id. at 289-90.
[13] La. R.S. 9:4823(A) provides as follows:

A. A privilege given by R.S. 9:4801, a claim against the owner and the privilege securing it granted by R.S. 9:4802, or a claim against the contractor granted by R.S. 9:4802 is extinguished if:
(1) The claimant or holder of the privilege does not preserve it as required by R.S. 9:4822; or
(2) The claimant or holder of the privilege does not institute an action against the owner for the enforcement of the claim or privilege within one year after the expiration of the time given by R.S. 9:4822 for filing the statement of claim or privilege to preserve it; or
(3) The obligation which it secures is extinguished.
[14] La. R.S. 9:4811(C) provides that "[a] notice of contract is not improperly filed because a proper bond is not attached."
[15] Appellant's argument that res judicata applies likewise lacks merit. As the trial court found, the judgment in a separate suit canceling the liens does not relate to the alleged debt owed Tallulah by Northeast and thus cannot function to require dismissal of the instant case under res judicata principles.
[16] See also Raspanti v. Litchfield, XXXX-XXXX, p. 6 (La.App. 4 Cir. 11/21/06), 946 So.2d 234, 238-39 ("`[w]hen it can reasonably do so, the court should maintain a petition against a peremptory exception [of no cause of action] so as to afford the litigant an opportunity to present his evidence'")(quoting Kuebler, supra); Humphrey v. Robertson, XXXX-XXXX, p. 3 (La.App. 4 Cir. 3/11/98), 709 So.2d 333, 335 (stating that "all pleadings must be reasonably construed as to afford litigants their day in court" and "[c]ourts must look to the substance of the pleadings and grant the appropriate relief to which the parties are entitled under the facts raised in the pleadings"); Adams v. First National Bank of Commerce, 94-0486 (La.App. 4 Cir. 9/29/94), 644 So.2d 219, 223 ("courts look beyond mere headings and terminology used on or in pleadings to determine the circumstances and the true nature of the suit"); Griffith v. Metry Cab Service, Inc., 266 So.2d 739, 741 (La.App. 4th Cir.1972)("courts look beyond mere headings and terminology used on or in pleadings to determine the circumstances and true nature thereof").
[17] Article 1846 of the Louisiana Civil Code provides as follows:

When a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of five hundred dollars may be proved by competent evidence.
If the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances.
La. Civ.Code art. 1846 (emphasis added).
[18] The Second Circuit similarly held in Murco, Inc. v. Streeter Service Elec., Inc., 41,599, p. 2 (La.App. 2 Cir. 11/1/06), 942 So.2d 690, 692, that a party to a lawsuit may serve as the one credible witness to establish the existence of an oral contract pursuant to Article 1846. The court further held that "[t]he other corroborating circumstances need only be general in nature; independent proof of every detail of the agreement is not required." Id. The court noted that the corroborating evidence must come from a source other than the plaintiff. Id.
[19] See also Meredith v. Louisiana Federation of Teachers, 209 F.3d 398 (5th Cir.2000) (finding that in a suit for dismissal of employee without cause, "[t]he requirement of `one witness' may be met by the plaintiff's own testimony, and the corroborating evidence may be the fact that the plaintiff left a secure position to work for the new employer"); O'Rourke v. Tracy, 375 So.2d 747, 748 (La.App. 4 Cir. 1979)(noting that a party to a lawsuit may serve as his own "credible witness" for purposes of Article 1846, and that "although he still must show other circumstances which corroborate his claim, this means only general corroboration and does not require independent proof of every detail of the witness's testimony").
[20] As the trial court noted in its Reasons for Judgment, Mr. Williams testified that he and Mr. Dew agreed that Mr. Dew would construct the two homes on Darrow Street, but that they did not agree on a price for the construction; Mr. Williams also testified that Northeast agreed to pay Mr. Dew for the cost of the labor and materials to build the two homes with no profit for Tallulah or Mr. Dew.
[21] See also Dumas and Associates, Inc. v. Lewis Enterprises, Inc., 29,900 (La.App. 2 Cir. 12/22/97), 704 So.2d 433, 438 (when a contract is implied from the circumstances, but no agreement as to compensation has been reached, the missing term is supplied by the court, and the measure of damages, is the reasonable value of claimant's services); Porter v. Johnson, 408 So.2d 961, 966 (La.App. 2 Cir.1981) ("[w]here there is a contract for the rendering of services but there is no agreement for the price or compensation, the plaintiff is entitled to be paid for the services rendered").