YAVONKA G. ARCHAGA

VERSUS

TONYA JOHNSON, GARRON JOHNSON AND
JOHNSON AND JOHNSON LAW OFFICES,
LLC

NO. 19-CA-85

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 769-152, DIVISION "M"
HONORABLE HENRY G. SULLIVAN, JR., JUDGE PRESIDING

October 16, 2019

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Robert A. Chaisson, and Stephen J. Windhorst

<u>**AFFIRMED**</u>
**FHW**
**RAC**
**SJW**

COUNSEL FOR PLAINTIFF/APPELLEE,
YAVONKA G. ARCHAGA
    Arita M. L. Bohannan

COUNSEL FOR DEFENDANT/APPELLANT,
TONYA JOHNSON, GARRON JOHNSON AND JOHNSON AND JOHNSON
LAW OFFICES, LLC
    Tonya S. Johnson

**WICKER, J.**

In this breach of contract action, defendants, Tonya Johnson, Garron Johnson, and Johnson & Johnson Law Offices, LLC, appeal the trial court's judgment rendered against them in favor of plaintiff, Yavonka Archaga. For the following reasons, we affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Yavonka Archaga, a certified public accountant, and the Johnsons, practicing attorneys, have been friends for over thirty years. In April 2015, after having lunch together, Mrs. Johnson expressed to Ms. Archaga, not for the first time, that she and her husband, Garron Johnson, were in need of assistance in the handling of their taxes. In response, Ms. Archaga offered to look at the Johnsons' documentation in order to see if she could be of assistance. Initially, Mrs. Johnson delivered two suitcases and a box to Ms. Archaga filled with IRS letters, certified letters, as well as bank statements and check registers. Ms. Archaga was required to go through and organize all of the documents so that she could determine exactly what financial services the Johnsons needed. After her initial review of the information provided, it became apparent to Ms. Archaga that, while Mrs. Johnson had filed taxes as "married filing separately" for some of the years, Mr. Johnson had not filed tax returns since 2007.

Thereafter, Ms. Archaga and Mrs. Johnson verbally agreed that Ms. Archaga would prepare the federal and state business and personal tax returns for Tonya Johnson, Garron Johnson, the Law Office of Garron Johnson, and Johnson & Johnson Law Offices, LLC for the tax years, 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014 and 2015. However, Ms. Archaga and Mrs. Johnson did not execute a written contract in advance of the performance, or otherwise, specifically agreeing to the method or terms of payment for Ms. Archaga's tax and accounting services. During the ensuing nineteen months, several phone calls between Ms. Archaga, the

Johnsons and the Internal Revenue Service ("IRS") took place, as well as numerous meetings between Ms. Archaga and Mrs. Johnson, all for the purpose of collecting the requisite documentation so that Ms. Archaga could compile the data and draft the Johnsons' required federal and state returns. Ms. Archaga testified that she documented over 403 hours spent preparing the Johnsons' tax returns and other required documentation. The Johnsons—particularly, Mrs. Johnson—were involved throughout the entire process during which Ms. Archaga was providing financial services to, and on behalf of, the Johnsons.

In September 2016, when the Johnsons' 2007 – 2015 tax returns were completed, Ms. Archaga avers that Mrs. Johnson orally agreed that payment was due to Ms. Archaga for her work. According to Ms. Archaga, this oral agreement was corroborated by a September 9, 2016 email exchange that took place between the parties:

> Yavonka Archaga: Hey Tee, [w]e need to discuss the work done on your taxes. You know as professionals, we need to be compensated for our services. You are aware of the multiple hours I have worked on your taxes so I will not charge you the full price. But anyone would agree that compensation is due.

> Tonya Short Johnson: I would agree.

Ms. Archaga testified that on September 27, 2016, following a charitable organization board meeting[1] she and Mrs. Johnson attended, the parties verbally discussed payment for the services that she had provided to the Johnsons. Ms. Archaga advised Mrs. Johnson that she was charging the Johnsons a flat fee of $25,000 for over 400 hours of work in preparing their tax returns and related

---

[1] At the time of trial, Ms. Archaga was the executive director of the New Orleans Resources for Independent Living, a private non-profit organization. Mrs. Johnson began serving in a volunteer capacity on the board of directors of the nonprofit in April 2015.

documents, which she discounted by 65% from her regular rate because of their longstanding friendship.  Mrs. Johnson did not request a written invoice.  Also during that discussion, she and Mrs. Johnson agreed that Mrs. Johnson would pay an additional $5,000 in order for Ms. Archaga to prepare the Johnsons' 2016 tax returns, set up an accounting system (*i.e.*, Quick Books), and assist in processing an installment agreement with the IRS for the Johnsons to pay their back taxes.

Ms. Archaga testified that she met with Mrs. Johnson on October 25, 2016, at which time Mrs. Johnson advised that she was prepared to make an initial payment to Ms. Archaga of $5,000 within the next two weeks, and to pay Ms. Archaga $5,000 each month thereafter until Ms. Archaga was paid in full, unless Mrs. Johnson first received settlement funds that she was anticipating.  In the event Mrs. Johnson received the expected settlement funds, she agreed to pay the balance due Ms. Archaga from those funds.  According to Ms. Archaga, Mrs. Johnson was to make the initial $5,000 payment to Ms. Archaga's PayPal address.  Ms. Archaga's testimony was corroborated by a text message she received from Mrs. Johnson the following day, October 26, 2016, requesting Ms. Archaga's PayPal address.  Ms. Archaga testified that after she provided her PayPal address to Mrs. Johnson, she received no payment via PayPal.

The next time Ms. Archaga communicated with Mrs. Johnson about the payment due was in a text message she received from Mrs. Johnson on November 8, 2016:

> Tonya Short Johnson:  Happy Election Day! Finally.  Let me know when you are free to wrap up.  I have a check that was supposed to be here on Friday, but I should have it tomorrow.  Is it okay to pay you 1500 tomorrow, and can we revise our agreement to 1500 a month until some things start to come together.

Yavonka Archaga:       Give me a call when you can talk to
                       get better clarification and discuss
                       other options.  I will work with you as
                       much as possible but would like to get
                       this behind us as soon as we can.
                       Talk to you soon.

Ms. Archaga testified that one month later, Mrs. Johnson came to her house on December 8, 2019.  On that day, Ms. Archaga claims she worked for eight hours on coding/classifying 198 financial transactions involving various accounts into the Johnsons' Quick Books system for 2016.  This testimony was corroborated by a text message exchange between the parties, which occurred on that date:

Tonya Short Johnson:   I'm outside.

                       In the driveway. (9:28 AM)

Yavonka Archaga:       Come to the front door. (9:28 AM)

Yavonka Archaga:       I worked and got us down to

                       30 transactions – 5341

                       32 transactions – 0050

                       28 transactions – AmEx

                       62 transactions – 9826

                       46 transactions – IOLTA

                       Only 198 to go. WOHOO!  (10:07 PM)

Tonya Short Johnson:   Yeehaw!!!!!  (10:49 PM)

Ms. Archaga testified that on the following day, December 9, 2016, she texted Mrs. Johnson to ask whether "the quick pay" had been sent, to which Mrs. Johnson replied, "No, I don't have it yet."  Ms. Archaga further testified that on December 12, 2016, she received the following text message from Mrs. Johnson:

Tonya Short Johnson:   Good morning, the plan was to meet
                       today.  Can we video
                       conference/phone conference today.  I
                       can answer the questions but I can
                       also try to get some demand letters
                       out to settle some cases at the same
                       time.  Also, on the money piece I
                       don't have a client coming with some
                       money until Wednesday. Lmk

Yavonka Archaga: Let's plan to meet Wednesday after you meet with your client. Also, how much are you going to pay me on Wednesday? Let's execute an installment agreement until you get the Lucy Reed settlement check. You can remit the balance then since it's taking a while to settle. I will reflect that payment on Wednesday in the installment agreement. What do you think?

According to Ms. Archaga, instead of replying via text, Mrs. Johnson sent her an email dated that same day, December 12, 2016, which contained the following:

**Billing for Accounting Services**
Tonya Johnson <t__ @hotmail.com>
To: "y_____@gmail.com" <y_____@gmail.com>

Good morning Vee,

I just wanted to put everything in writing so that we are on the same page, and so that I am clear and there is no future confusion. When we began this process it started as helping out a friend type of deal, which is the reason that I would always answer any legal question, truly the reason I hired Lexi, why I am on the Board, why I have done anything that you needed with no thought of cost in mind. In spite of that, I had always planned to compensate you when my next big case had settled, because of the work that you have done, which I truly appreciate.

I personally have not had a big case to settle up to this point, and we never discussed the bill or the charges. **After your review the bill that was presented to me verbally in October of this year and confirmed in a follow up text to me on October 24, to complete taxes from the time we started this process until the filing of 2015 taxes is $25,000.00, which includes all work done from 2007-2015, and the 940 and 941 that have been completed but still need to be filed.** That day was the first time I knew of the actual amount that you were requesting. If I had known and anticipated that type of

bill, I would have made arrangements to pay monthly or been in a better position to determine what I could afford.

**I believe you also indicated that you are charging an additional $5000 for the 2016 work and to complete the installment agreement for the IRS.**

Additionally, you indicated that it would be $1000 per month for CPA services if we hired you to handle our 2017 accounting. This is my appreciation and I just want to make sure I am clear.

**I offered upon receiving this $25,000 bill to do an installment agreement**, however, you indicated that you wanted to wait for Lucy Reed to settle. Because it has not yet formally settled you indicated on Wednesday that you wanted some payment towards the bill instead of waiting. **Today you indicated a desire to enter into an installment agreement. I am okay with that**, but I just wanted to document how we would proceed, because I just want to know what to expect so I can be prepared to meet these obligations.

Based on that, **I really would like to have a formal invoice that documents the $25,000 and the $5000**, with your EIN that I should use for a 1099. Additionally, I would like to decline CPA services for 2017 **until I have completed paying this bill**. I do not want to make payment contingent upon any one case settling, rather **I would like to do an installment agreement of $1500 per month and I can pay you on the 15th of each month beginning this month**. [Emphasis added.]

-Tonya

Ms. Archaga testified that she replied to Mrs. Johnson's email the following day and attached a detailed invoice delineating the hours worked, the total number of transactions coded, and the documents she had prepared on behalf of the Johnsons. Specifically, Ms. Archaga documented working 403 hours: 302.75 hours for coding/classifying financial transactions at a rate of $200 per hour ($60,550), and 100.25 hours for preparation of documents at a rate of $250 per

hour ($25,062.50), for a total amount assessed of $85,612.50, discounted by 65%, for a total of $30,000.[2]

Despite repeated amicable demands, the Johnsons refused to remit payment to Ms. Archaga, contending that there was no valid, enforceable oral agreement between the parties that obligated the Johnsons to pay for the financial services Ms. Archaga provided to them. According to the Johnsons, to the extent there was ever any agreement in place between the parties, it was a "*quid pro quo*" verbal agreement whereby Ms. Archaga agreed to provide accounting services to the Johnsons at no cost, in exchange for the Johnsons providing legal assistance to Ms. Archaga at no cost.

On February 16, 2017, Ms. Archaga filed suit against Tonya Johnson, Garron Johnson, and Johnson & Johnson Law Offices, LLC, for breach of an oral agreement. In her petition, Ms. Archaga alleges that, despite amicable demand, the Johnsons failed to uphold their end of an oral agreement to pay her the discounted amount of $30,000.00 owed for the financial services that she provided to them and for preparation of the Johnsons' federal and state business and personal taxes for the years 2007 – 2015. Ms. Archaga claimed that she was, therefore, entitled to the full value of the financial services she provided to the Johnsons totaling $85,612.50, plus legal interest and attorney's fees.[3] In addition, Ms. Archaga included in her petition a prayer for any "further legal and equitable relief as the Court deems necessary and proper."

In their answer to the petition, the Johnsons denied all of Ms. Archaga's factual allegations. The Johnsons affirmatively asserted that Ms. Archaga and the Johnsons entered into a verbal agreement wherein the parties agreed to exchange

---

[2]    Ms. Archaga testified that she did not complete the Johnsons' 2016 taxes as they refused to remit any payment.
[3]    In the petition, Ms. Archaga, delineated each of the IRS documents she prepared for the Johnsons and the "Garron Johnson required tax forms for employees."

professional services without charge. Further, the Johnsons averred that they were not indebted to Ms. Archaga because they never agreed in writing or verbally to pay her "any agreed hourly amount of money for accounting services." According to the Johnsons, Ms. Archaga "unilaterally sought to change the terms of their '*quid pro quo*' agreement" because she was financially overextended and was aware that the Johnsons were in the process of negotiating a settlement in a personal injury matter.

The case came to trial on April 25, 2018. Ms. Archaga was the only witness to testify. During her testimony, photocopies of the several text messages and email exchanges between Ms. Archaga and Mrs. Johnson between September 2016 and December 2016 were admitted into evidence over the Johnsons' objection. At the close of Ms. Archaga's case, the Johnsons moved for a directed verdict on the basis that, pursuant to La. C.C. art. 1846, Ms. Archaga failed to present evidence of corroborating circumstances sufficient to satisfy her burden of establishing the existence of a valid and enforceable oral agreement for payment of a sum greater than $500.[4] Specifically, the Johnsons argued that Ms. Archaga failed to present evidence of an oral agreement that was corroborated by someone other than herself, and that the documents she submitted into evidence, which were not verified or authenticated by anyone other than herself, did not constitute the requisite "corroborating circumstances." The trial court, acknowledging that the burden of proof was upon Ms. Archaga, denied the Johnsons' motion stating:

> The Court believes that there's been sufficient testimony
> and evidence, which has been admitted, to satisfy, to this
> point, that burden. The e-mails, which were
> authenticated by the plaintiff, are e-mails and texts that
> come also from defendants in this case, and, in fact, in
> cross-examination both defendants questioned the
> witness, the plaintiff, with regard to those e-mails. The

---

[4] Though the Johnsons moved for a directed verdict at the close of Ms. Archaga's case, since this was a case tried by the court without a jury, the proper procedural device would have been to move for an involuntary dismissal pursuant to La. C.C.P. art. 1672(B).

testimony is uncontroverted as to the author of those
emails.

After the trial court denied their motion, the Johnsons, without calling any witnesses or introducing any evidence, rested their case. Upon the close of the proceedings, the trial court, ruling from the bench in favor of Ms. Archaga, provided the following oral reasons for judgment:

> The Court, based upon the record in the matter and the testimony of the witnesses, it's clear that the plaintiff, Ms. Archaga, did perform a great deal of work for the benefit of the defendants in this case. The question is whether or not there was agreement as to what form of payment, the amount of the payment and so on. I would agree with Mr. Johnson in his argument that there was no hourly rate agreed upon, and, therefore, the Court cannot award $83,000 based upon the failure of the parties to reach an agreement as to an hourly rate or that amount. There was an agreement, based upon the evidence that was presented to the Court, that the amount of $25,000 paid for the past work, plus the 2016 amount for setting up Quick Books, and so on, the additional $5,000. The Court would find in favor of the plaintiff and against the defendants in the amount of $30,000, plus interest from date of judicial demand and all costs. The Court cannot award attorney's fees. The Court - - because there was no contract which included attorney's fees as part of the contract, and, because the Court finds that this is not an open account, that the Court cannot award and the plaintiff would not be entitled to attorney's fees.

Accordingly, the trial court entered judgment in favor of Ms. Archaga and against the Johnsons and their law firm in the amount of $30,000, plus all costs and judicial interest from the date of judicial demand until paid. The instant appeal ensued.

On appeal, the Johnsons aver that there never existed a mutual agreement that obligated them to submit payments for any services Ms. Archaga may have rendered; *i.e.*, there was never an agreement to pay. To the contrary, the Johnsons contend that the parties had a "standing 'quid pro quo' agreement for services."

The Johnsons further maintain that they signed no professional contract for services and that the December 2016 invoice submitted by Ms. Archaga failed to include credits for services the Johnsons may have provided to Ms. Archaga. The Johnsons raise three assignments of error for this Court's review; to wit: (1) the trial court erred in admitting into evidence the text messages and emails that were authenticated solely by Ms. Archaga; (2) the trial court erred in applying the rules governing oral contracts by making an award on an oral contract when Ms. Archaga produced no corroborating evidence; and (3) the trial court, having determined that there was no agreement regarding an hourly rate and that there was no open account, erred in casting the Johnsons in judgment for $30,000.

Ms. Archaga argues the trial court correctly applied La. C.C. art. 1846 in determining that an oral agreement to pay her was entered into and not satisfied by the Johnsons. She contends that the emails and text messages were properly authenticated and admitted into evidence, and that the email and text messages authored by Mrs. Johnson, corroborated her testimony that the Johnsons had acknowledged and agreed that Ms. Archaga was owed $30,000, and that the Johnsons had attempted to work out a payment plan with her.

**LAW AND ANALYSIS**

The applicable standard of appellate review of the factual findings of the trial court is the manifestly erroneous or clearly wrong standard. *Troxler v. Breaux*, 12-330 (La. App. 5 Cir. 11/27/12), 105 So.3d 944, 948. Under this standard, in order to reverse a trial court's finding, an appellate court must conduct a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong. *S.J. v. Lafayette Parish Sch. Bd.*, 09-2195 (La. 7/6/10), 41 So.3d 1119, 1127-28; *Stobart v. State, Dep't of Transp. and Development*, 617 So.2d 880, 882 (La. 1993). Furthermore,

when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Stobart*, 617 So.2d at 882. Where there are two or more permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Stobart*, 617 So.2d at 883. A determination as to the existence of a contract is a finding of fact which may not be disturbed on appeal unless it is clearly wrong. *Arias v. Albe*, 04-26 (La. App. 5 Cir. 5/26/04), 876 So.2d 179, 182.

The party that demands performance of an obligation must prove the existence of that obligation. La. C.C. art. 1831; *Knight v. Magri*, 15-543 (La. App. 5 Cir. 2/24/16), 188 So.3d 311, 315, *writ denied*, 16-0741 (La. 6/3/16), 192 So.3d 747. Under Louisiana law, formation of a valid and enforceable contract requires capacity, consent, a certain object, and a lawful cause. *Marcantel v. Jefferson Door Co., Inc.*, 01-1307 (La. App. 5 Cir. 4/10/02), 817 So.2d 236, 239. If a contract is not reduced to writing and its price or value is greater than $500, the contract must be proved by at least one witness and other corroborating circumstances. La. C.C. art. 1846; *Treen Constr. Co. v. Schott*, 03-1232 (La. App. 5 Cir. 1/27/04), 866 So.2d 950, 954. A party may offer his own testimony in support of a claim of an oral contract. *Gulf Container Repair Servs. v. FIC Bus. & Fin. Ctrs., Inc.*, 98-1144 (La. App. 5 Cir. 3/10/99), 735 So.2d 41, 43. Corroborating circumstances must come from a source other than the plaintiff. *Id.* Only general corroboration is required; it is not necessary that the plaintiff offer independent proof of every detail. *Id.* The question of whether evidence presented

is sufficient to corroborate a claim under article 1846 is a finding of fact to be made by the trier of fact and will not be overturned unless it is clearly wrong. *Id.*

With these legal precepts in mind, we now turn to the facts and circumstances of the instant case to determine whether the trial court's judgment in favor of Ms. Archaga was manifestly erroneous or clearly wrong.

### *Admissibility of Text Messages and Emails*

In their first assignment of error, the Johnsons claim the trial court erred when it allowed into evidence photocopies of the text messages and emails exchanged between the parties. Specifically, the Johnsons aver that because only a printout of a screenshot taken of the text messages was presented at trial, rather than the actual cell phone on which the text messages were received, and because the text messages and emails were authenticated solely by Ms. Archaga and not by another party, "which amounted to hearsay testimony," the text messages and emails should not have been admitted into evidence. We disagree.

Authentication of evidence is required in order for evidence to be admissible at trial. La. C.E. art. 901 states that "authentication" is a "condition precedent to admissibility" that is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *State v. Haydin*, 17-234 (La. App. 5 Cir. 12/20/17), 235 So.3d 1293, 1301, *writ denied*, 18-0114 (La. 10/29/18), 254 So.3d 701 citing *State v. Lee*, 01-2082 (La. App. 4 Cir. 8/21/02), 826 So.2d 616, 624, *writ denied*, 02-2549 (La. 9/5/03), 852 So.2d 1019. La. C.E. art. 901(B) provides an illustrative, though not exhaustive, list of examples of authentication or identification that conforms with the requirements of this article. Generally, the standard applied with respect to the authentication of a document is whether there is sufficient evidence from which a reasonable juror (or trier of fact) could find the proposed evidence is what the proponent claims it to be. *See State v. Haydin*, 235 So.3d at 1301 (text messages exchanged between the defendant and his brother

were properly authenticated by the brother, the recipient of the texts); *State v. Smith*, 15-1359 (La. App. 4 Cir. 4/20/16), 192 So.3d 836, 844 (proper authentication for social media type evidence is whether sufficient evidence supports a finding by a reasonable fact finder that the proffered evidence is what it purports to be); *State v. Harris*, 52,541 (La. App. 2 Cir. 2/27/19), 266 So.3d 953, 961 (copies of text messages authenticated by the recipient of the texts were deemed admissible); and *State v. Frank*, 15-893 (La. App. 3 Cir. 5/25/16), 192 So.3d 895-96, *rev'd on other grounds*, 16-1160 (La. 10/18/17), 234 So.3d 27 (La. 10/18/17) citing *State v. Benedict*, 04-742 (La. App. 3 Cir. 11/10/04), 887 So.2d 649, 657 (screen shots of text messages were deemed admissible when authenticated by a witness who had personal knowledge of the item depicted, identified it).

In the case *sub judice*, Ms. Archaga, who had personal knowledge, authenticated all of the emails and text messages as originals and photocopies of what she personally digitally possessed. Ms. Archaga testified that she was the recipient of the texts authored by Mrs. Johnson, on a cell phone that was hers, which texts she took a screen shot of and printed. The printout clearly shows the sender as "Tonya Short-Johnson." After being subject to cross-examination, the evidence was admitted. The Johnsons were present at trial representing themselves and could have submitted controverting testimony or evidence, but did not. We find the trial court was not manifestly erroneous or clearly wrong in its determination that photocopies of the emails and text messages were properly authenticated or in admitting them into evidence. *See also* La. C.E. art. 1003.1.

Further, La. C.E. art. 801(D)(2) specifically provides that a statement that is offered against "a party" and is the party's "own statement, in either his individual or a representative capacity" does not constitute hearsay. Because the "statements"

contained in the emails and text messages were made by the parties themselves, they are not hearsay.  This assignment of error is without merit.

### *The Existence of an Oral Contract under La. C.C. art. 1846*

The Johnsons argue that the trial court erred in its determination that an oral contract was proven under La. C.C. art. 1846 where the only corroborating evidence presented came solely from the plaintiff.  Under La. C.C. art. 1846, when a writing is not required by law, a contract with a value in excess of $500, and not reduced to writing, must be proved by at least one witness and other corroborating circumstances.  *Knight*, 188 So.3d at 315.  It is well settled that a party in the litigation may serve as his or her own "credible witness" in fulfilling the requirements of Article 1846.  *Deubler Elec. Inc. v. Knockers of Louisiana*, 95-372 (La. App. 5 Cir. 11/15/95), 665 So.2d 481, 484.  However, the corroborating circumstances required must come from a source other than the plaintiff.  *Regel L. Bisso, L.L.C. v. Stortz*, 11-25 (La. App. 5 Cir. 10/25/11), 77 So.3d 1033, 1035-36.  Whether there were corroborating circumstances sufficient to establish an oral contract is a question of fact.  *Id*. at 1036.

Our review of the record supports the trial court's conclusion that a valid agreement to pay existed.  Specifically, Ms. Archaga testified that she orally agreed to provide financial services to the Johnsons, and that when the accounting and tax work were completed, Mrs. Johnson orally agreed that compensation to Ms. Archaga for those services was due.  Ms. Archaga's testimony is corroborated by the numerous text messages *authored by Mrs. Johnson* to Ms. Archaga wherein Mrs. Johnson expressed that she agreed that compensation for Ms. Archaga's work was due, proposed a plan for payment, and then requested to "revise [their] agreement" to reduce the monthly payment to $1,500 per month.  These text messages were uncontroverted.  We find the trial court correctly concluded that the text messages authored by Mrs. Johnson and sent to Ms. Archaga constituted the

requisite "corroborating circumstances" as they were generated "by a source other than the plaintiff." *See Regel L. Bisso, L.L.C.*, 77 So.3d at 1035-36.

Similarly, we find the December 12, 2016 email written by Mrs. Johnson and then sent to Ms. Archaga, wherein Mrs. Johnson acknowledged that $25,000 was due for Ms. Archaga's preparation of the Johnsons' 2007 – 2015 taxes, and that an additional $5,000 was due for Ms. Archaga's preparation of the Johnsons' 2016 taxes, creating an installment plan for the IRS, and setting up an accounting system for the Johnsons, also constitutes "corroborating circumstances" sufficient to prove that there existed an oral agreement to pay. Specifically, in that email, Mrs. Johnson declined Ms. Archaga's offer to provide any further accounting services until she "**completed paying this bill**." In the very last sentence of the email, Mrs. Johnson stated that "[she] **would like to do an installment agreement of $1500 per month and I can pay you on the 15th of each month beginning this month**." We find no error in the trial court's factual finding that the text messages and email generated by Mrs. Johnson constituted the necessary "corroborating circumstances" sufficient to establish an oral contract between the parties for the Johnsons to pay Ms. Archaga. This assignment of error is without merit.

### *Enforceability of a Contract Lacking a Price or Hourly Rate*

We also find no merit to the Johnson's argument that the trial court was clearly wrong "when it cast appellants in judgment when the court determined that there was no agreement regarding [an] hourly rate." To the contrary, the fact that an hourly rate for Ms. Archaga's services was not agreed upon does not vitiate the oral agreement. *Morphy, Makofsky & Masson, Inc. v. Canal Place 2000*, 538 So.2d 569, 574 (La. 1989). Because we find that a valid oral agreement to pay existed between Ms. Archaga and the Johnsons, even in the absence of an agreed upon amount, equity principles mandate that Ms. Archaga receive compensation

for a reasonable value for the financial services she provided. *Id.* at 574-75. It is well-settled that where an agreement exists but the price to be paid is omitted, the court, in the context of contractual interpretation must supply the missing price. *Tallulah Const., Inc. v. Northeast Louisiana Delta Community Development Corp.*, 07-1029 (La. App. 4 Cir. 4/23/08), 982 So.2d 225, 233. Moreover, in the absence of an agreed upon hourly rate or price, the equity principles set forth in La. C.C. art. 2055 would apply to the facts of this case. Article 2055 provides, in pertinent part:

> Equity, as intended in the preceding articles, is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another.

The Louisiana Supreme Court, when determining the reasonable value for the plaintiff's services in *Morphy*, *supra*, held that although "there is no specific test which must be applied to determine the reasonable value for such services," the calculation "is a matter of equity depending upon the circumstances of each case." *Morphy*, 538 So.2d at 575. La. C.C. art. 1999 provides that "[w]hen damages are unsusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages." La. C.C. art. 1999; *Tallulah Const., Inc.*, 982 So.2d at 234. In this case, the trial court, considering the testimony and evidence presented, found that the oral agreement between the parties was for the Johnsons to pay $25,000 for past work, plus an additional $5,000 for the services Ms. Archaga provided in 2016, for a total amount due to Ms. Archaga of $30,000. The record supports this amount. In particular, though Ms. Archaga testified that the value of the financial services she provided to the Johnsons exceeded $85,000 and presented an invoice documenting these services, Ms. Archaga also testified that because of her longtime friendship with the Johnsons, she had agreed to a discounted flat fee totaling $30,000. Moreover, in

the email Mrs. Johnson sent to Ms. Archaga on December 12, 2016, Mrs. Johnson acknowledged the $30,000 amount that was due and recommended an installment agreement of $1,500 per month until the bill was paid.

Upon a careful review of the record, and for the reasons stated above, because we find nothing which demonstrates that the trial court was unreasonable in its finding that there was a valid agreement between the parties for the Johnsons to pay Ms. Archaga, we find no manifest error on the part of the trial court or that the trial court was clearly wrong. Further, because we find that the Johnsons acknowledged that an amount of $30,000 was due to Ms. Archaga, and that the employment of equity principles supports that amount based on the record, we find no error in the trial court's award of $30,000 to Ms. Archaga.

**CONCLUSION**

For the foregoing reasons, the judgment of the trial court in favor of Yavonka Archaga and against the Johnsons and their law firm is affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

MARY E. LEGNON
INTERIM CLERK OF COURT

CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**OCTOBER 16, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

_____
**MARY E. LEGNON**
INTERIM CLERK OF COURT

# 19-CA-85

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE HENRY G. SULLIVAN, JR. (DISTRICT JUDGE)
ARITA M. L. BOHANNAN (APPELLEE)       TONYA S. JOHNSON (APPELLANT)       LAUREN DAVEY ROGERS (APPELLEE)
GARRON M. JOHNSON (APPELLANT)

**MAILED**
NO ATTORNEYS WERE MAILED